# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Montana Strong, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   - against -<br><br>Apple, Inc.,<br><br>        Defendant | **3:23-cv-774 (AMN/ML)**<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Apple, Inc. ("Defendant" or "Apple") sells the iPhone 14 Pro smartphone, combining a cell phone and computer ("Product").




2.      Apple promotes the 14 Pro's features, such as its "48MP (megapixel) Main camera [with] Mind-blowing detail," navigation, "A battery that's all in, all day," and its A16 cutting-edge chip that enable these and other functions.

 

 

3.      However, to experience any of these features requires turning the device "on," only possible when it has received power in the form of electricity.

4.      This is supplied through a charging cord and wall plug, so users can operate their iPhone 14 Pro to access the internet, play games, take pictures, get directions and communicate with friends.



5.      Though Apple previously included charging blocks with the iPhone, it stopped doing so on the basis of provide environmental benefits from foregoing the use of precious metals needed for their manufacture and a general goal of reducing "e-waste," the disposal of electronics.

6.      Purchasers of the iPhone 14 Pro who realized their expensive and high tech smartphone could not be turned on without the essential wall plug were shocked.



7.      Instead of receiving charging cords and power adapters, iPhone 14 Pro buyers received only a charging cord, SIM card ejector and sticker with their device.

 

8.    The only notice provided to iPhone 14 Pro buyers that they would be unable to turn

their smartphone on was in small print on the back of the box, which stated, "Includes: iPhone 14

Pro and USB-C to Lightning Cable; power adapter and headphones sold separately."



Includes: iPhone 14 Pro and USB-C to Lightning Cable; power adapter and headphones sold separately. Supports: GSM, UMTS, LTE, and 5G (sub-6 GHz, mmWave) · Wi-Fi, Bluetooth, NFC, and GPS · Some capabilities not available and depend on region, wireless plan, and network · For LTE and 5G, see apple.com/iphone/cellular · Hearing aid compatible · More at apple.com/iphone/compare.

Requires: Wireless plan (may include restrictions on switching providers and roaming, even after contract expiration) · eSIM · Apple ID (for some features) · Internet access · Acceptance of software license

9.    Some have theorized that not including a charging plug is a way to compel or

"nudge" customers to pay extra money for Apple's proprietary wireless charging accessories, which have a significantly higher profit margin than the commoditized power adapter.[1]



10.     However, typical iPhone purchasers do not want to charge their phones wirelessly and/or spend the additional money for unreliable wireless charging.

11.     Nor do all purchasers have a surfeit of unused chargers at home from prior iPhones or other Apple devices.

12.     Even where iPhone purchasers are upgrading to a new version, like to the 14 Pro, they may not have the charger from their previous device or it may have become non-functional due to age and/or usage.

13.     Additionally, the charger they have from a previous iPhone may no longer be compatible with the iPhone they are upgrading to.

---

[1] https://www.independent.co.uk/tech/apple-sued-china-students-iphone-cable-b1947083.html

14.     Buyers of the iPhone 14 Pro expect it will come with a charging cable and plug because this is consistent with common trade practices in the sale of smartphones, which provide not only the smartphone but the charging equipment to use it.

15.     Since the utility of the iPhone 14 Pro depends upon a charging cable and wall plug, the failure to include the wall plug renders the Product defective as sold and/or diminished in value, because it will not operate unless the buyer completes a separate purchase for more money.

16.     By selling the iPhone 14 Pro without a charging block, purchasers are unable to use it as intended, whether to make calls, use the internet, play games and send messages, because these functions require power transmitted to the device in the form of electricity.

17.     Countries including Brazil are requiring Apple to add back the charging adapter to the iPhone 14 Pro box or allow purchasers to receive it free by requesting one online.



Jurisdiction and Venue

18.     Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

6

19.    The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

20.    Plaintiff is a citizen of New York.

21.    Defendant is a citizen of California.

22.    The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

23.    The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold without a charger within this State for over two years.

24.    Thousands of New Yorkers have bought the iPhone 14 Pro and expected it came with a charger, from cell phone carriers, consumer electronics retailers, internet sellers and directly from Defendant's stores or website.

25.    Venue is in this District because Plaintiff resides in Chenango County and a substantial part of the events or omissions giving rise to these claims occurred in Chenango County, including Plaintiff's purchase, expectation the Product would come with a charger and realization it did not include a charger.

## Parties

26.    Plaintiff is a citizen of Chenango County.

27.    Defendant is a California corporation with a principal place of business in California.

28.    Plaintiff bought the iPhone 14 Pro and expected it would come with a charging block so it could be turned on and used, without having to buy another product.

29.    Plaintiff expected that if she was buying something which required the purchase of another item to render the purchase functional, this information would be prominently disclosed to her, which was not the case here.

7

30.     Plaintiff purchased the Product through a cell phone carrier and/or consumer electronics store in 2022, in New York.

31.     As a result of the false and misleading representations and omissions, the Product is sold at premium price, approximately not less than eight hundred dollars, excluding tax and sales.

32.     Plaintiff bought the Product at or exceeding the above-referenced price.

33.     Plaintiff paid more for the Product, would have paid less or not have purchased it had she known the representations and omissions were false and misleading.

34.     The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

35.     Plaintiff chose between this Product and others represented similarly, but which did not misrepresent or omit their attributes, requirements, instructions, features, and/or components.

<u>Class Allegations</u>

36.     Plaintiff seeks certification of a:

> **New York Class:** All persons in the State of New York who purchased the Product in New York within the statutes of limitations for each cause of action alleged.

37.     Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

38.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

39.     Plaintiff is an adequate representative because her interests do not conflict with other members.

40.     No individual inquiry is necessary since the focus is only on Defendant's practices

and the class is definable and ascertainable.

41.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

42.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

<u>New York General Business Law ("GBL") §§ 349 and 350</u>

43.    Plaintiff incorporates by reference all preceding paragraphs.

44.    Plaintiff relied on a basic expectation that a mobile phone would be sold with the essential parts to render it functional, because the alternative would be the purchase of an incomplete and/or non-functional product and/or previous iPhones were sold with power adapters and charging cords.

45.    Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breach of Contract</u>

46.    Plaintiff and Defendant entered into a contract for the sale of the Product.

47.    The terms included the Product would include the necessary components to render it functional, such as a charging block.

48.    Plaintiff paid money for the Product, which Defendant received.

49.    Defendant breached the contract because the Product did not include the necessary component in the form of a charging block to render it functional.

50.    Plaintiff was injured by having to go without a charger and/or paying additional money for a charger, without paying any reduced price for the Product.

Breaches of Express Warranty and
Implied Warranty of Merchantability/Fitness for a Particular Purpose

51.     The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff that it would be sold with the essential parts to render it functional, because the alternative would be the purchase of an incomplete and/or non-functional product and/or previous iPhones were sold with power adapters and charging cords.

52.     Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

53.     Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

54.     Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it would be sold with the essential parts to render it functional, because the alternative would be the purchase of an incomplete and/or non-functional product and/or previous iPhones were sold with power adapters and charging cords.

55.     Defendant's representations affirmed and promised that the Product would be sold with the essential parts to render it functional, because the alternative would be the purchase of an incomplete and/or non-functional product and/or previous iPhones were sold with power adapters and charging cords.

56.     Defendant described the Product so Plaintiff believed that it would be sold with the essential parts to render it functional, because the alternative would be the purchase of an incomplete and/or non-functional product and/or previous iPhones were sold with power adapters

and charging cords, which became part of the basis of the bargain that it would conform to its affirmations and promises.

57.  Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

58.  This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for its established iPhone line of smartphones.

59.  Plaintiff recently became aware of Defendant's breach of the Product's warranties.

60.  Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

61.  Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators like in Brazil and elsewhere, competitors, and consumers, to its main offices, and by consumers through online forums and/or its website.

62.  This includes numerous complaints from users in the United States and abroad, including official action taken in other countries to require Apple to provide a power adapter with the sale of the iPhone 14 Pro.

63.  The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

64.  The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it would be sold with the essential parts to render it functional, because the alternative would be the purchase of an incomplete and/or non-functional product and/or previous iPhones were sold with power adapters and charging cords.

65.    The Product was not merchantable because Defendant had reason to know the particular purpose for which it was bought by Plaintiff, because she expected it would be sold with the essential parts to render it functional, because the alternative would be the purchase of an incomplete and/or non-functional product and/or previous iPhones were sold with power adapters and charging cords, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

<u>Unjust Enrichment</u>

66.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2.  Awarding monetary, statutory and/or punitive damages and interest;

3.  Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4.  Other and further relief as the Court deems just and proper.

Dated:   June 25, 2023

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com